[NOT FOR PUBLICATION - NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals
## For the First Circuit

---

No. 01-1151

MICHAEL MORRISSETTE,

Petitioner, Appellant,

v.

JAMES MATESANZ, SUPERINTENDENT,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, Senior U.S. District Judge]

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Saris,* District Judge.

---

Brian P. Carey, with whom Nicholas C. Theodorou, John A. Shope, and Foley, Hoag & Eliot LLP, were on brief, for petitioner, appellant.
James J. Arguin, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, was on brief, for respondent, appellee.

---

*Of the District of Massachusetts, sitting by designation.

**Per curiam.**  Michael Morrissette appeals from the district court's denial of his petition for a writ of habeas corpus, claiming that his 1991 state court conviction for second-degree murder was tainted by the admission of trial evidence obtained in violation of his Fifth Amendment right against self-incrimination.  Given the highly deferential standard applicable to review of state court judgments by federal courts under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), see 28 U.S.C. § 2254(d)(1), we affirm.

We state the facts briefly.  Petitioner was one of three young males charged in the stabbing death of a 73-year-old man in an alley in Lowell, Massachusetts, late on the night of September 18, 1988. Two of the young men, including petitioner, were charged as joint venturers, with only the third accused of directly committing the attack.  Trial evidence pointed to petitioner as owner of one of two knives used in the killing, and he was alleged to have encouraged the friend who initiated the stabbing to "finish off" the seriously wounded victim to prevent identification.

Several hours after the crime, at about 3 a.m., petitioner was stopped in the vicinity for questioning by police officers.

He was asked to remove a shoe for comparison with footprints found at the murder scene and was told his print matched, an assertion that appears to have been an intentional misrepresentation.[1] Petitioner agreed to accompany the officers to the police station. He was given Miranda warnings and eventually signed two statements admitting his presence at the crime scene. He also agreed to a blood test that showed traces of another individual's blood on his hand. Petitioner claims these statements and blood test results were obtained involuntarily and thus were admitted into evidence in violation of the Fifth Amendment. See Haynes v. Washington, 373 U.S. 503, 513-14 (1963).

Petitioner cites a number of factors to support his contention that the officers obtained the challenged evidence by overbearing his will, including his age (seventeen), his limited education (ninth grade), the time of day (early hours of the morning), his fatigue, his lack of contact with a lawyer or guardian, and the officers' intentional misstatement that they had evidence placing him at the murder scene. He asserts that

---

[1] A police report detailed this exchange between petitioner and officers, but the officers involved testified at a suppression hearing more than two years later that they did not recall asking for the shoe or observing that it matched footprints at the crime scene. Testimony at trial indicated that, in fact, no footprints had been found at the scene.

the totality of these circumstances compels the conclusion that his cooperation with the officers was involuntary, requiring suppression of the inculpatory evidence resulting from the interview.

Whether or not this would be a close case on direct review, it is far from that in its present posture. To obtain a writ of habeas corpus, petitioner must show both that the Commonwealth denied his constitutional rights and that the Massachusetts courts made a determination that was contrary to, or an unreasonable application of, federal law in rejecting his claim. See McCambridge v. Hall, 266 F.3d 12, 17 (1st Cir. 2001); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001); 28 U.S.C. § 2254(d)(1).[2] A state court determination is unreasonable only if it is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998); see also Williams v. Matesanz, 230 F.3d 421, 425 (1st Cir. 2000).

---

[2] Petitioner does not argue that the state court ruling was "contrary to" clearly established federal law or, under 28 U.S.C. § 2254(d)(2), that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We therefore consider only whether the decision represented an "unreasonable application" of clearly established federal law.

This is not such a case. During his six hours of detention, petitioner was unrestrained, afforded access to a restroom, and offered coffee. He was advised of his <u>Miranda</u> rights before giving the statements or consenting to the blood test. Although the hour was late, the trial court found no evidence of weariness, and petitioner can point to no evidence in the record that he was sleep-deprived. He was stopped on the street, not taken from his home. Indeed, petitioner was alert enough, and comfortable enough, to point out a typographical error in the transcription of his first statement. The officers' fabrication of evidence adverse to petitioner – the supposed footprints – is insufficient in this context to render unreasonable the state courts' conclusion that he acted voluntarily. There is no evidence of a causal connection between the deception and either petitioner's willingness to accompany the officers to the police station or his later decision, after <u>Miranda</u> warnings, to give a statement and allow the blood test. <u>See</u> <u>United States</u> v. <u>Byram</u>, 145 F.3d 405, 408 (1st Cir. 1998) ("trickery is not automatically coercion").

Petitioner maintains that the state trial court's decision was unreasonable because the judge did not explicitly consider all of the relevant factors in a "totality of the circumstances" review. He points out, for example, that the judge's decision

failed to address his age, lack of education, and the footprint deception.  The district court, however, carefully reviewed each of the factors raised by petitioner in concluding that, even "taken together," they do not permit a finding that the state court unreasonably applied federal law in rejecting petitioner's Fifth Amendment claim.  Our own review leads us to the same determination.  Accordingly, the district court did not err in denying the application for a writ.

Affirmed.